# EXHIBIT 8



December 2, 2015

**_Via U.S. Mail & E-mail_**
Ms. Eileen S. Goldgeier
General Counsel
North Carolina State University
304 Holladay Hall
Raleigh, NC 27695

   *Re: Violation of First Amendment Rights*

Dear Ms. Goldgeier,

    Alliance Defending Freedom ("ADF") represents Grace Christian Life ("GCL") regarding North Carolina State University's (the "University") violation of its First Amendment rights.

    By way of introduction, ADF is an alliance-building, non-profit legal organization that advocates for the right of people to live out their faith freely. We are dedicated to ensuring that students and faculty have the ability to freely exercise their First Amendment rights on public university campuses without fear of censorship or punishment. While we often litigate to defend these freedoms, today we write to urge you to revise the University's unconstitutional speech policy.

    GCL is a registered Student Organization at the University and a member of the Chaplains' Cooperative Ministry. GCL's goal is to give an accurate picture of Jesus and His church to all people everywhere. In furtherance of this goal, student members and University-authorized staff of GCL regularly initiate and engage with students in conversations about religion and other important topics. These conversations take place in the public areas of campus where students congregate such as the Talley Student Union. On September 15, 2015, GCL was informed by Dr. TJ Willis, via an e-mail from Ann Pearce, Director of the Chaplains' Cooperative Ministry, that GCL was not allowed to approach students for the purpose of engaging in religious conversations. Dr. Willis stated that this type of activity violates the University's non-commercial solicitation policy.

    The solicitation policy relied upon by Dr. Willis provides that all noncommercial solicitation, in areas other than University Housing, "must be approved in advance by Student Involvement, and, if applicable, by the administrator responsible for the facility or location where the activity is to be held" (the "Policy"). NCSU Reg07.25.12. The Policy defines "Non-Commercial Solicitation" as

15100 N. 90th Street, Scottsdale, AZ 85260   Phone: 480.444.0020   Fax: 480.444.0028   ADFlegal.org

> any distribution of leaflets, brochures or other written material, or oral speech to a passersby, conducted without intent to obtain commercial or private pecuniary gain. This definition does not include the dissemination of information for purposes of the administrative, academic, research, or extension activities of the University.

*Id.*

The Policy is unconstitutional on its face and as applied to GCL because it requires prior permission before students are allowed to exercise their First Amendment rights, and it grants unfettered discretion to University officials in determining whether to grant permission to speak. The University must revise the Policy to recognize that its campus is generally a public forum for students and to remove the requirement that students must obtain permission before speaking on campus.

The historic view of the university as a "voluntary and spontaneous assemblage . . . for students to speak and to write and to learn" has persisted with respect to the modern American university.[1] "The college classroom with its surrounding environs is peculiarly the 'marketplace of ideas.'"[2] Indeed, the "campus of a public university, at least for its students, possesses many of the characteristics of a public forum."[3] Federal courts across the country have found that the outdoor areas of a university campus are public fora.[4] For example, in *Roberts v. Haragan*, the court found that to the extent that Texas Tech's campus has "park areas, sidewalks, streets, or other similar common areas, these areas are public forums, at least for the University's students, irrespective of whether the University has so designated them or not."[5] The court went even further and found that these areas were "the 'irreducible public forums' on campus," and the university was free to designate further areas for student expression, but could not designate less.[6]

---

[1] *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 836 (1995).
[2] *Healy v. James*, 408 U.S. 169, 180 (1972).
[3] *Widmar v. Vincent*, 454 U.S. 263, 268 n.5 (1981).
[4] *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1062–63 (9th Cir. 2012) (holding Oregon State University campus is designated public forum for students); *Flint v. Dennison*, 488 F.3d 816, 831 (9th Cir. 2007) (noting campus is a public forum); *Bowman v. White*, 444 F.3d 967, 979 (8th Cir. 2006) (finding outdoor areas of University of Arkansas are designated public forums); *Justice for All v. Faulkner*, 410 F.3d 760, 768–69 (5th Cir. 2005) (finding University of Texas is a designated forum for students); *Univ. of Cincinnati Chapter of Young Ams. for Liberty v. Williams*, 2012 WL 3636932 (S.D. Ohio Aug. 22, 2012) (finding outdoor areas of University of Cincinnati are designated public fora); *Roberts v. Haragan*, 346 F. Supp. 2d 853, 861 (N.D. Tex. 2004) (holding park areas, sidewalks, streets, and common areas of Texas Tech University are traditional public forums for students); *Pro-Life Cougars v. Univ. of Houston*, 259 F. Supp. 2d 575, 582 (S.D. Tex. 2003) (finding campus is a public forum for students); *Khademi v. S. Orange Cnty. Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011, 1024 (C.D. Cal. 2002) (finding the generally available areas of a community college campus are public fora because they are open to the public); *Burbridge v. Sampson*, 74 F. Supp. 2d 940 (C.D. Cal. 1999) (finding a community college campus to be a public forum because it is open to the public).
[5] *Roberts*, 346 F. Supp. 2d at 861.
[6] *Id.* at 862.

Similarly, in *Burbridge v. Sampson*, students in the South Orange County Community College District challenged restrictive policies pertaining to student speech in outdoor areas of campus. The college had opened its facilities generally for speech, so the court had "no doubt" that they had been opened to the public and analyzed the restrictions using strict scrutiny.[7]

The University's Policy is an unconstitutional prior restraint because it requires permission before a student speaks. Prior restraints on speech are disfavored and carry a heavy presumption of unconstitutionality because they censor speech before it occurs.[8] This presumption is "justified by the fact that 'prior restraints on speech . . . are the most serious and least tolerable infringement on First Amendment rights.'"[9] "[R]easonable time, place, [and] manner restrictions" on speech are permissible.[10] Because the University is a public forum for students, any regulation requiring authorization from an administrator before expressive activity may occur is a prior restraint on speech. Advanced notice requirements for student speech, like the University's, often fail strict scrutiny because they disable spontaneous and anonymous speech, which is often "the most effective kind of expression."[11] The "simple knowledge that one must inform the government of his desire to speak and must fill out appropriate forms and comply with applicable regulations discourages citizens from speaking freely."[12] Therefore, the Policy must be revised to remove the requirement that students must obtain permission from the University before engaging in speech activities.

The University's Policy granting unfettered discretion to campus officials to admit or deny the speech application is also unconstitutional. The Supreme Court consistently condemns regulations on speech that vest discretion in an administrative official to grant or withhold a permit based upon broad criteria unrelated to the proper regulation of public places.[13] If the permit scheme involves the appraisal of facts, exercise of judgment, and formation of an opinion, the danger of censorship is too great to be permitted.[14] Left with only vague or non-existent criteria on which to base their decision, government officials "may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker."[15] Even if there is no evidence to point to a content-based motive for an

---

[7] *Burbridge*, 74 F. Supp. 2d at 947–48.
[8] *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963).
[9] *Grossman v. City of Portland*, 33 F.3d 1200, 1204 (9th Cir. 1994) (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1975)).
[10] *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).
[11] *Grossman*, 33 F.3d at 1206; *see Watchtower Bible & Tract Soc'y of N.Y. v. Vill. of Stratton*, 536 U.S. 150, 166–67 (2002) (holding permit requirement violates First Amendment because it prohibits anonymous speech); *NAACP, W. Region v. City of Richmond*, 743 F.2d 1346, 1355 (9th Cir. 1984) ("all advance notice requirements tend to inhibit speech").
[12] *NAACP*, 743 F.2d at 1354.
[13] *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 153 (1969).
[14] *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992).
[15] *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 763–64 (1988).

administrator's application of college regulations, the very fact that the regulations are so open-ended as to allow the administrator to enforce them based on content is enough for them to fail constitutional scrutiny. The Policy is vague and grants unfettered discretion to the administrator. Thus, the Policy must be revised to remove the requirement.

Alliance Defending Freedom has worked with universities across the country to draft speech policies which fully protect their students' First Amendment rights. I look forward to working with you to revise the Policy so that the University will truly be a marketplace of ideas where students of all different backgrounds and beliefs will be free to communicate their opinions and ideas without fear of censorship or punishment. Please be advised that if the University fails to revise the Policy, GCL will have no choice but to take further legal action against the University for its violation of GCL's constitutional rights.

Sincerely,

Tyson C. Langhofer
Senior Counsel
ALLIANCE DEFENDING FREEDOM

CC: KARLENE TURRENTINE, ESQ. (VIA E-MAIL)
HANNALEE ALRUTZ (VIA E-MAIL)